ARTHUR N. BLUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12739, 14953.   Promulgated July 30, 1948.

*Robert Ash, Esq., W. T. Durant, Esq.,* and *John Y. Merrell, Esq.,* for the petitioner.

*Robert H. Kinderman, Esq.,* for the respondent.

104

OPINION.

LEECH, *Judge*: The first issue presented is whether the respondent erroneously determined that the payments made by the company to the petitioner in the taxable periods involved were compensation taxable as ordinary income. The contention of petitioner is that the payments are consideration paid for the sale and transfer of several patents constituting capital assets and are therefore taxable as long term capital gains. In the alternative, petitioner contends that the relationship between himself and the company was that of joint adventurers, and that he sold his interest in the adventure to the company, which constituted the sale of a capital asset. The answer to this controversy involves a determination of the ownership of the patents. Since petitioner's employment was covered by three specific interrelated agreements, our inquiry is narrowed to ascertaining the intent of the parties as expressed therein. Do these contracts clearly and unmistakably set forth the rights of the respective parties? We find in them no ambiguity. Moreover, viewed in the light of the circumstances surrounding the employment, the relations of the parties during the employment, the specific aims sought to be achieved, and the course of conduct of the respective parties all confirm the clarity of the terms of the agreements and evidence the fact that the parties thereto clearly understood their respective rights and obligations.

The evidence establishes that the employment agreement was entire, not divisible, and combined the features of general employment and employment for solving a particular problem. Cf. *United States* v. *Dubilier Condenser Corporation*, 289 U. S. 178. That the term "invention" was not employed is of no significance.

In *Standard Parts Co.* v. *Peck*, 264 U. S. 52, the employee agreed to "devote his time to the development of a process and machinery for the production of the front spring now used on the product of the Ford Motor Company," and the resulting device was there held to be the property of the employer.

In the instant case, one of the terms of employment was that petitioner was to devote his attention to the adaptation of the chain saw which the company hoped to manufacture and sell. Petitioner's employment, to the extent that it related to a chain saw, was as much a contract of specific employment to make an invention as was the

agreement in the case of *Standard Parts Co.* v. *Peck, supra.* Cf. *Magnetic Mfg. Co.* v. *Dings Magnetic Separator Co.*, 16 Fed. (2d) 738; certiorari denied, 274 U. S. 740; *Goodyear Tire & Rubber Co.* v. *Miller*, 22 Fed. (2d) 353.

The payments in controversy all relate to commissions paid in the taxable years with respect to power chain saws of the Mafell type. All three interrelated contracts of employment, respectively dated March 31, 1933, January 25, 1939, and March 28, 1941, specifically mention the chain saw device. The employment agreements clearly indicate that both parties had in mind that in the development of a chain saw adaptable to the needs of the company, patentable claims might be discovered. The agreement under date of January 25, 1939, contains the following significant paragraph:

> It is further understood that you will immediately make every effort to develop claims and apply for patents on any features of the said Power Chain Saw or accessories which you have developed, and which it is mutually agreed by yourself and this Company are of sufficient value to warrant the securing of a patent or patents. Should any patents be granted on any of these claims you agree that these will be assigned forthwith to this Company, without any other compensation to you than that provided under this agreement.

The record further establishes that petitioner worked in the company's plant with facilities supplied by it and with assistance from other employees. Petitioner on prior occasions voluntarily assigned to the company other applications for patents and other patents obtained during the course of his employment. It is hardly conceivable that he would have transferred them had he not recognized that such was his duty under the various employment contracts. The fact that certain of the patents involved were granted subsequent to the time the employment contract was terminated by petitioner December 31, 1941, is immaterial. Petitioner, as we understand, makes no claim that the ideas and patentable claims were not developed during the period of employment. On brief, petitioner concedes that "a chain saw embodying petitioner's inventions was finished and tested in September 1937." The evidence establishes that a number were sold in 1940.

Petitioner emphasizes the fact that the employment of petitioner could be terminated by either party upon 30 days' notice. He argues that such a provision is inconsistent with a contract to invent, since inventions are recognized as normally a slow process; that it would be manifestly unfair if an inventor could be discharged immediately upon perfecting an invention. Under this provision, however, the rights and obligations of the parties were reciprocal. Both parties were on the same footing. We think that provision has no bearing on the particular question we are to decide.

Considerable evidence was presented and respective counsel on brief argue at length as to the inferences to be drawn from the manner in which the company carried the patents on its books, the treatment accorded the payments it made under the employment contract for tax purposes, and the treatment given to the payments by petitioner in his original income tax returns, wherein he returned the receipts as ordinary income rather than as capital gains. We attach no controlling significance to such evidence. It does indicate, however, that both parties construed their respective pertinent rights and obligations under the agreements as we do.

Applying the established law relative to the rights of employer and inventor to the specific employment contract in question, we conclude that the patents involved were the exclusive property of the company. Petitioner's only interest therein was to receive the compensation provided in such employment agreement. No sale of patents or other capital assets was included. From such conclusion, it necessarily follows that no joint adventure existed with respect to such patents.

The respondent's determination that the entire compensation received by petitioner under the employment agreement was includible in his gross income in the respective taxable years is sustained.

Another issue presented is whether petitioner is entitled to a deduction of $800 paid for legal fees in connection with advice as to his rights under the employment contract in question and to the sum of $110 for travel expenses, supplies, and postage, which amounts were paid in the taxable year 1943. The record establishes that on petitioner's original return for that year these amounts were listed in schedule G, but were not deducted on the face of the return in arriving at the net taxable income for such year. In an amended return filed for 1943, such amounts were claimed by petitioner, but were disallowed by respondent. The respondent contends here that, since the only proof offered was the testimony of petitioner that such amounts had been paid by him for the purposes stated, the evidence is insufficient to overcome the presumption of correctness of his determination. We do not agree. We see no reason for not accepting the testimony of petitioner as establishing a prima facie case of deductible expenditures. The respondent did not cross-examine the petitioner with respect to such expenditures, or offer any independent proof discrediting petitioner's testimony. We have found as a fact that such payments were in fact made, and we conclude they are properly deductible in the taxable year 1943.

Petitioner also claims to be entitled to a deduction of the sum of $1,861.33 in the taxable year 1944 as an expenditure in connection with the assignment of the patents in question. The mention of such amount appears for the first time in petitioner's reply to the amended

answer filed by the respondent. Whether the deductibility of this item has been properly raised as an issue, we need not now determine, since we are convinced that it is not properly deductible. On brief petitioner argues that this item is a part of his cost of the patents and is therefore deductible from their sale price. We have already concluded, however, that the patents were the exclusive property of the company and that there was no sale by petitioner of any of the patents involved herein. Therefore, there being no sale, petitioner had no cost basis from which to deduct the item of $1,861.33. The deduction of such amount is denied.

*Decisions will be entered under Rule 50.*